IN THE UNITED STATED DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ARTHUR C. CLINGMAN, SAMUEL J. SINGLETON,
JAMES ALLEN, DOUGLAS GASPAR,
CLARENCE R. SINGLETON, GREGORY BROWN,
JOHN L. SINGLETON, CARLTON BIGGERS,
MAURICE HAMM, CHARLES T. BIGGERS, and
JOHN DOES 1-10,

    Plaintiffs,

vs.                                                                                                 No. CIV 00-808 JC/LFG (ACE)

JULIE SHEMITZ, FRED MOORE,
WILLIAM GOODENOUGH, RON KAHN,
and FRANK CHAVEZ, individually,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER came on for consideration of the following motions: (1) Defendants Shemitz, Burnham and Williams' Motion for Summary Judgment as to All Claims in Plaintiffs' Complaint, filed March 1, 2001 *(Doc. 14)*; (2) Defendant Shemitz's, Burnham's, and Williams' Motion for Summary Judgment on the Grounds that the Plaintiffs' Claims are Barred by Absolute and Qualified Immunity, filed March 1, 2001 *(Doc. 16)*; (3) Motion to Dismiss No. I: Dismissal of Plaintiffs' First Amendment Right to Access the Courts Claims Against Defendants Rottinger, Moore, Goodenough, Khan, Woodson, and Chavez, filed March 12, 2001 *(Doc. 20)*; (4) Motion to Dismiss No. II: Dismissal of Plaintiffs' Fourth and Fifth Amendment and Attorney's Fees and Costs Claims Against Defendants Rottinger, Moore, Goodenough, Khan, Woodson, and Chavez, filed March 12, 2001 *(Doc. 22)*; (5) DEA Defendants' Motion for Partial Summary Judgment No.

I: Dismissal of Plaintiffs' First and Sixth Amendment Right to Counsel Claims Against Defendants Rottinger, Moore, Goodenough, Khan, Woodson, and Chavez Based on the Bar Imposed by Heck v. Humphrey, 512 U.S. 477 (1994), filed April 2, 2001 *(Doc. 28)*; (6) Defendant Shemitz's Motion for Summary Judgment on Plaintiffs' First and Sixth Amendment Claims, filed April 27, 2001 *(Doc. 38)*; (7) Plaintiffs' Motion to Strike Defendant Shemitz' Motion for Summary Judgment on Plaintiffs' First and Sixth Amendment Claims, filed May 10, 2001 *(Doc. 40)*; (8) Motion to Dismiss No. III: Dismissal of Plaintiffs' Complaint Against Defendants Moore, Goodenough, Khan, and Chavez Based on Plaintiffs' Failure to Exhaust Administrative Remedies as Required by the Prison Litigation Reform Act, filed July 26, 2001 *(Doc. 56)*; and (9) Plaintiffs' Motion to Strike DEA Defendants' Amended Motion to Dismiss No. III, filed September 10, 2001 *(Doc. 60)*. The Court has reviewed the motions, the memoranda submitted by the parties, and the relevant authorities.

**I.** **Background**

On July 26, 1996, the United States indicted twenty-six co-defendants on a number of federal criminal violations. Plaintiffs in this case were among those criminal defendants. Plaintiffs were incarcerated in the Torrance County Detention Center in Estancia, New Mexico, pending their respective trials.

On May 28, 1997, the government decided to seek a search warrant to seize "letters between inmates and/or family members or associates of the inmates." *See* Complaint for Civil Rights Damages at 3, ¶ 13, filed June 2, 2000 *(Doc. 1)*. The affidavits supporting the request for the warrant alleged that the criminal defendants, including the Plaintiffs in this case, were members of a conspiracy to "beat the charges" by hanging together and not pleading guilty to the

charges. *See id.* at ¶ 15. DEA Special Agent Steven Woodson filed the Application and Affidavit for Search Warrant with United States Magistrate Judge Joe Galvan for a neutral and detached determination of probable cause. Department of Justice, Criminal Division, prosecutor Julie Shemitz approved the filing of the Application and Affidavit for Search Warrant on behalf of the government.

Magistrate Judge Galvan issued the warrant and ordered the agents to execute their searches on or before June 7, 1997. The search warrant was executed by Agents William Goodenough, Ron Kahn, Frank Chavez, and Fred Moore of the Drug Enforcement Agency (collectively referred to as "DEA Defendants")[1]. DEA Defendants seized a number of documents, including certain documents protected by the attorney-client privilege. DEA Defendants also seized non-documentary items including "religious crosses, pieces of hard candy, a nail clipper, an emery board, packets of decongestants, family photographs and AA batteries." *See* Complaint for Civil Rights Damages at 4, ¶ 21.

After the warrant was executed by the DEA Defendants, the materials were transported and stored at the nearest DEA office. The materials were not tagged into evidence, assigned an evidence custodian, or placed in an evidence locker. Defendants claim that the materials were delivered to a taint team comprised of prosecutors and agents, and its function was to review the seized materials and shield the trial prosecutors and agents from reviewing any privileged documents.

---

[1]Defendants Stephen Woodson and Richard Rottinger have been dismissed from the case. *See* Stipulated Order Dismissing Complaint Against Stephen Woodson and Richard Rottinger with Prejudice, filed March 30, 2001 *(Doc. 26)*. Likewise, Defendants David Williams and Kelly Burnham have been dismissed from the case. *See* Order Dismissing Defendants David Williams and Kelly Burnham with Prejudice, filed March 30, 2001 *(Doc. 27)*.

During an evidentiary hearing in the criminal case, federal agents testified inconsistently regarding the location of the attorney-client privileged documents and the chain of custody of the seized materials. In the months following the execution of the warrant, defense attorneys and Plaintiffs learned that the volume of documents seized exceeded the volume to which the government claimed responsibility.

At a discovery motion hearing on June 30, 1997, the Honorable Bruce D. Black, United States District Judge for the District of New Mexico, ordered the Government to produce an inventory of the items seized. On July 22, 1997, ASUA Williams provided an incomplete inventory to the Court.

On August 26, 1997, Judge Black appointed the Honorable William Deaton, Chief United States Magistrate Judge, as special master and ordered that all seized materials be turned over to him for review. In response to continuing concerns by defense counsel regarding the volume of documents seized being under represented by the government, Chief Magistrate Judge Deaton set the matter for a hearing on September 29, 1997. On September 16, 1997, the government delivered to Chief Magistrate Judge Deaton a number of documents and subsequently filed a notice informing the Court that the documents had been in the possession of the DEA Defendants since June 3, 1997.

On October 6, 1997, Judge Deaton conducted an evidentiary hearing in order to develop a record of the events surrounding the jail cell searches. After the hearing, Judge Deaton filed a Report and Recommendation to the Court with regard to the search and seizures. Judge Deaton found that the additional material originally held by DEA Defendant Moore had never been inspected by the trial team for the United States Attorney's office.

Once all of these discovery issues came to light, Plaintiffs' criminal defense attorneys filed a motion to dismiss the claims against their clients with prejudice on the grounds of intentional interference with the attorney-client relationship. On January 6, 1998, Judge Black heard arguments on the Plaintiffs' motion to dismiss. Judge Black denied the motion to dismiss, adopted the Report and Recommendations of Chief Magistrate Judge Deaton, and suppressed all of the evidence from the search of the jail cells. The criminal defendants, including Plaintiffs in this case, subsequently plead guilty to various criminal charges.

Plaintiffs now claim that their rights under the First, Fourth, Fifth, and Sixth Amendments to the United States Constitution were violated when: (1) Defendants intentionally seized attorney-client privileged documents from their jail cells for review by a taint team; (2) Defendants seized non-documentary items not included in the scope of the search warrant; and (3) Defendants failed to properly account for seized items and consciously withheld a complete inventory of such items. *See* Complaint for Civil Rights Violations, filed June 2, 2000 *(Doc. 1)*.

**II.     Standard of Review**

DEA Defendants move to dismiss the claims against them based on qualified immunity. *See* Motion to Dismiss No. I: Dismissal of Plaintiffs' First Amendment Right to Access the Courts Claims Against Defendants Rottinger, Moore, Goodenough, Khan, Woodson, and Chavez, filed March 12, 2001 *(Doc. 20)*; *see also* Motion to Dismiss No. II: Dismissal of Plaintiffs' Fourth and Fifth Amendment and Attorney's Fees and Costs Claims Against Defendants Rottinger, Moore, Goodenough, Khan, Woodson, and Chavez, filed March 12, 2001 *(Doc. 22)*. In the context of a 12(b)(6) motion to dismiss, a court's review of the qualified immunity defense is limited to the pleadings. *See Gagan v. Norton*, 35 F.3d 1473, 1475 (10th

Cir.1994). In assessing the pleadings, a court construes the allegations in the complaint, and any reasonable inferences to be drawn therefrom, in favor of the plaintiff. *See Sutton v. Utah State School for the Deaf and Blind*, 173 F.3d 1226, 1236 (10th Cir.1999). In order to accept a claim of qualified immunity, a court must decide whether the plaintiff sufficiently alleges that a defendant violated a statutory or constitutional right, and if so, whether that right was clearly established and a reasonable person in the defendant's position would have known that his or her conduct violated that right. *See Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 516 (10th Cir.1998).

In addition, Defendant Shemitz moves for summary judgment based on qualified immunity. *See* Defendants Shemitz's, Burnham's, and Williams' Memorandum in Support of Their Motion for Summary Judgment on the Grounds that the Plaintiff's Claims are Barred by Absolute Immunity and Qualified Immunity ("Defendant Shemitz's Memorandum on Qualified Immunity") at 18, filed March 1, 2001 *(Doc. 17)*. Summary judgment decisions involving a qualified immunity defense are handled differently from other summary judgment decisions. *See Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). After a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff to satisfy a heavy two-part burden. *See Scull v. New Mexico*, 236 F.3d 588, 595 (10th Cir. 2000); *see also Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995). Specifically, a plaintiff must show that "(1) the defendants' actions violated a constitutional or statutory right; and (2) the right was clearly established and reasonable persons in the defendants' position would have known their conduct violated that right." *Cruz v. City of Laramie*, 239 F.3d 1183, 1187 (10th Cir. 2001). If a plaintiff fails to satisfy either part of the inquiry, the court must grant the defendant qualified immunity. *See Albright*, 51 F.3d at

6

1535. If the plaintiff successfully establishes the violation of a clearly established right, the burden shifts to the defendant, who must prove "'that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law.'" *Id.* (*quoting Hinton v. City of Elwood*, 997 F.2d 774, 779 (10th Cir. 1993)).

Although Defendant Shemitz submitted a summary judgment motion, the Court does not need to consider evidence outside the pleading with respect to her claim of qualified immunity. Therefore, the motion by Defenant Shemtiz will be construed under the standards set forth for a reviewing a motion to dismiss based on qualified immunity.

**III.     Analysis**

  **A.     Seizure of Privileged Documents for Review by a Taint Team**

The traditional approach for dealing with disputed documents is to have a neutral and detached magistrate or court-appointed special master conduct an *in camera review* under seal. *See, e.g., United States v. Zolin*, 491 U.S. 554, 570-71 (1989). Rather than pursuing this approach, Defendants in this case decided to seize all documents in Plaintiffs' jail cells, allow a "taint team" to remove privileged materials, and turn over the remaining documents to the trial team so they could act upon them with respect to the criminal prosecutions. "A 'taint team' is a name...applied to a person or persons designated by the Department of Justice to conduct a review of materials alleged to contain privileged information." *Black v. United States*, 172 F.R.D. 511, 513 n.2 (S.D. Fla. 1997). The materials deemed to be privileged are not to be disclosed to prosecutors, agents, or employees involved in the criminal prosecution of a particular case. *See id.*

In this case, Plaintiffs claims that Defendants' intentional seizure and review of attorney-

7

client privileged documents violated their rights under the First, Fourth, Fifth, and Sixth Amendments to the United States Constitution. Although the Tenth Circuit has never addressed the constitutionality of the government's decision to employ a taint team, the Court has addressed constitutionality of prosecutorial intrusion into the attorney-client relationship under the Sixth and Fourteenth Amendments. *See Shillinger v. Haworth*, 70 F.3d 1132, 1138 (10th Cir. 1995). Since all of Plaintiffs' constitutional claims in this instance hinge on whether it was inappropriate for Defendants to intentionally seize and review attorney-client privileged documents, the Court finds that the principles outlined in *Shillinger* are persuasive. In particular, the Tenth Circuit held that when the government purposefully intrudes into the attorney-client relationship without a legitimate justification, "such an intrusion must constitute a *per se* violation of the Sixth Amendment." *Id.* at 1142. However, if the government has a legitimate justification for the intentional intrusion, a plaintiff must present proof of injury or benefit to the government in order to establish a constitutional violation. *See id.*

Plaintiffs clearly have alleged that the seizure of attorney-client documents for review by a taint team is a purposeful intrusion into the attorney-client relationship. However, a purposeful intrusion, in and of itself, does not *per se* violate the constitution. The government also must lack a legitimate justification for the purposeful intrusion. Here, Plaintiffs have failed to allege that Defendants lacked such a justification.

In fact, the allegations in the complaint demonstrate that Defendants did have a legitimate justification for intruding into the attorney-client relationship by the use of a taint team. Plaintiffs were incarcerated at the Torrance County Detention Center at the time of the search. *See* Complaint for Civil Rights Violations at 3, ¶ 9. In addition, Defendants faced a substantial task of

8

sifting through numerous documents. *See id.* at 8, ¶ 42 (documents weighed in excess of 57 pounds). In light of these circumstances, removing all of the documents to a separate location effectively minimized the disruption to the Detention Center and promoted safety interests. *See United States v. Santarelli*, 778 F.2d 609, 615 (11th Cir.1985) (removing documents to another location for subsequent examination was reasonable in light of the fact that examination would require several days). Therefore, Defendants had a legitimate justification for the purposeful intrusion.

Once the government has a legitimate justification for the intentional intrusion, a plaintiff must allege either an injury or benefit to the government in order to establish a constitutional violation. *See Shillinger,* 70 F.3d at 1142. The Court finds neither in this case. First, Plaintiffs attempt to claim that Defendant benefitted from the intentional intrusion because they reviewed attorney-client privileged materials. *See* Complaint for Civil Rights Violations at 5-6, ¶ 29. The only possible way Defendants could have benefitted from the review of privileged materials was if the taint team released such information to the trial team. No such allegation is present in the complaint. In fact, both Judge Black and Chief Magistrate Judge Deaton determined that none of the privileged materials were reviewed by the trial team.

Plaintiffs also are unable to claim that they were injured as a result of Defendants' actions. All of the evidence seized was suppressed. *See id.* at 9, ¶ 49. Each of the Plaintiffs subsequently plead guilty to the criminal charges they faced. Accordingly, the Court finds that Plaintiffs have failed to allege a Sixth Amendment violation under *Shillinger*.

Furthermore, all of Plaintiffs' remaining constitutional claims with respect to the taint team flow from a Sixth Amendment violation. Since the Court finds that Plaintiffs have failed to allege

9

a constitutional violation under the Sixth Amendment, the Court also finds that Plaintiffs have failed to allege constitutional violations under the First, Fourth, and Fifth Amendments. Accordingly, both Defendant Shemitz and DEA Defendants are entitled to qualified immunity.

Finally, on a broader level, this Court does not view the use of taint teams as unconstitutional. *See United States v. Abbell*, 963 F. Supp. 1178, 1199 (S.D. Fla. 1997) (the assignment of a taint team supports the determination that a search is designed to minimize the exposure of privileged information). In fact, the Court can see where such an approach facilitates the interests of judicial economy. It is only when privileged information becomes available to the trial team and is used to the detriment of a defendant that the use of a taint team becomes unconstitutional.

### B. Seizure of Items Outside the Scope of the Warrant

Plaintiffs further allege that Defendants violated their constitutional rights when DEA Defendants seized non-documentary items outside the scope of the warrant, such as "religious crosses, pieces of hard candy, a nail clipper, an emery board, packets of decongestants, family photographs and AA batteries" from their jail cells. *See* Complaint for Civil Rights Violations at 4, ¶ 21. Clearly, Defendants seizure of these non-documentary items can only be described as de minimus and not rising to the level of a constitutional violation. *See Ingraham v. Wright*, 430 U.S. 651, 674 (1977)(constitution not concerned with "de minimus level of imposition"). Accordingly, Defendant Shemitz and DEA Defendants are entitled to qualified immunity.

### C. Post-Seizure Handling of the Materials

Finally, Plaintiffs allege that their First Amendment right to access the courts and Sixth Amendment right to counsel were violated by Defendants' post-seizure handling of the materials.

Specifically, Plaintiffs claim that the materials seized were not tagged into evidence, assigned an evidence custodian, or placed in an evidence locker. *See* Complaint for Civil Rights Violations at 5, ¶ 27. Plaintiffs further claim that Defendants testified inconsistently regarding the location of attorney-client materials and the chain of custody of such materials. *See id.* at ¶ 28. Finally, Plaintiffs claim that Defendants consciously withheld a complete inventory of the items seized. *See id.* at 9-10, ¶ 53.

The First Amendment states: "Congress shall make no law respecting...the right of the people...to petition the Government for a redress of grievances." The right to petition "is implicit in '[t]he very idea of government....'" *McDonald v. Smith*, 472 U.S. 479, 482 (1985) (*quoting United States v. Cruikshank*, 92 U.S. 542, 552 (1876)). "The right of access to the courts is indeed but one aspect of the right of petition." *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972).

In this case, Plaintiffs base their First Amendment claim on the allegation that Defendants tampered with evidence. *See* Plaintiffs' Response to Motion to Dismiss No. I of DEA Defendants at 2, filed April 27, 2001 *(Doc. 36)*. However, the Court finds that Plaintiffs' complaint fails to allege that Defendants tampered with evidence. Plaintiffs' allegations do suggest that Defendants post-seizure handling of materials is a cause for concern. Nevertheless, Plaintiffs' allegations do not indicate that the evidence was altered or changed in any way. Such a showing seems necessary if the Plaintiffs want to assert that Defendants tampered with evidence.

In addition, Plaintiffs allege that Defendants violated their Sixth Amendment right to counsel by consciously withholding a complete inventory of all the items seized. *See* Complaint for Civil Rights Violations at 9-10, ¶ 53. However, the Court finds that Plaintiffs cannot maintain

a claim for a Sixth Amendment violation in light of their claims under oath during their guilty pleas that they received effective assistance of counsel. "A guilty plea represents a brake in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *United States v. Davis,* 900 F.2d 1524, 1526 (10th Cir. 1999). In conjunction with their guilty pleas, each Plaintiff had the opportunity to alert the Court as to any interference with his right to counsel. Not a single Plaintiff raised such a complaint.

In summary, although there may have been some problems with regard to the post-seizure handling of the materials, the Court finds that the allegations do not state claims for constitutional violations. Accordingly, Defendant Shemitz and DEA Defendants are entitled to qualified immunity.

### D. Remaining Motions

Since Defendants are entitled to qualified immunity as explained above, the Court finds that the following motions are now moot: (1) Defendants Shemitz, Burnham and Williams' Motion for Summary Judgment as to All Claims in Plaintiffs' Complaint, filed March 1, 2001 *(Doc. 14)*; (2) DEA Defendants' Motion for Partial Summary Judgment No. I: Dismissal of Plaintiffs' First and Sixth Amendment Right to Counsel Claims Against Defendants Rottinger, Moore, Goodenough, Khan, Woodson, and Chavez Based on the Bar Imposed by Heck v. Humphrey, 512 U.S. 477 (1994), filed April 2, 2001 *(Doc. 28)*; (3) Defendant Shemitz's Motion for Summary Judgment on Plaintiffs' First and Sixth Amendment Claims, filed April 27, 2001

*(Doc. 38)*; (4) Plaintiffs' Motion to Strike Defendant Shemitz' Motion for Summary Judgment on Plaintiffs' First and Sixth Amendment Claims, filed May 10, 2001 *(Doc. 40)*; (5) Motion to Dismiss No. III: Dismissal of Plaintiffs' Complaint Against Defendants Moore, Goodenough, Khan, and Chavez Based on Plaintiffs' Failure to Exhaust Administrative Remedies as Required by the Prison Litigation Reform Act, filed July 26, 2001 *(Doc. 56)*; and (6) Plaintiffs' Motion to Strike DEA Defendants' Amended Motion to Dismiss No. III, filed September 10, 2001 *(Doc. 60)*. Accordingly, these motions are denied.

**IV.** **Conclusion**

For the above reasons, Plaintiffs failed to sufficiently allege constitutional violation under the First, Fourth, Fifth, and Sixth Amendments. Therefore, Defendant Shemitz and DEA Defendants are entitled to qualified immunity.

Wherefore,

IT IS ORDERED that the following motions are granted with respect to qualified immunity by Defendant Shemitz and DEA Defendants: (1) Defendant Shemitz's, Burnham's, and Williams' Motion for Summary Judgment on the Grounds that the Plaintiffs' Claims are Barred by Absolute and Qualified Immunity, filed March 1, 2001 *(Doc. 16)*; (2) Motion to Dismiss No. I: Dismissal of Plaintiffs' First Amendment Right to Access the Courts Claims Against Defendants Rottinger, Moore, Goodenough, Khan, Woodson, and Chavez, filed March 12, 2001 *(Doc. 20)*; and (3) Motion to Dismiss No. II: Dismissal of Plaintiffs' Fourth and Fifth Amendment and Attorney's Fees and Costs Claims Against Defendants Rottinger, Moore, Goodenough, Khan, Woodson, and Chavez, filed March 12, 2001 *(Doc. 22)*.

IT IS FURTHER ORDERED that the following motions are denied: (1) Defendants

Shemitz, Burnham and Williams' Motion for Summary Judgment as to All Claims in Plaintiffs' Complaint, filed March 1, 2001 *(Doc. 14)*; (2) DEA Defendants' Motion for Partial Summary Judgment No. I: Dismissal of Plaintiffs' First and Sixth Amendment Right to Counsel Claims Against Defendants Rottinger, Moore, Goodenough, Khan, Woodson, and Chavez Based on the Bar Imposed by Heck v. Humphrey, 512 U.S. 477 (1994), filed April 2, 2001 *(Doc. 28)*; (3) Defendant Shemitz's Motion for Summary Judgment on Plaintiffs' First and Sixth Amendment Claims, filed April 27, 2001 *(Doc. 38)*; (4) Plaintiffs' Motion to Strike Defendant Shemitz' Motion for Summary Judgment on Plaintiffs' First and Sixth Amendment Claims, filed May 10, 2001 *(Doc. 40)*; (5) Motion to Dismiss No. III: Dismissal of Plaintiffs' Complaint Against Defendants Moore, Goodenough, Khan, and Chavez Based on Plaintiffs' Failure to Exhaust Administrative Remedies as Required by the Prison Litigation Reform Act, filed July 26, 2001 *(Doc. 56)*; and (6) Plaintiffs' Motion to Strike DEA Defendants' Amended Motion to Dismiss No. III, filed September 10, 2001 *(Doc. 60)*.

DATED December 4, 2001.

_____
SENIOR UNITED STATES DISTRICT JUDGE

Counsel for Plaintiffs:

    Philip B. Davis, Esq.
    Co-Legal Director,
    American Civil Liberties Union of New Mexico
    Albuquerque, New Mexico

Counsel for Defendants:

    For Defendant Shemitz -
    R.E. Thompson, Esq.
    Megan A. Muirhead, Esq.
    Modrall, Sperling, Roehl, Harris & Sisk, P.A.
    Albuquerque, New Mexico

    For DEA Defendants -
    Stephen G. French, Esq.
    French & Associates, P.C.
    Albuquerque, New Mexico